## NOTICE OF OBJECTION TO CONFIRMATION

LAKEVIEW LOAN SERVICING, LLC has filed papers with the Court to object to the Confirmation of the Chapter 13 Plan.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to object to the Confirmation of the Chapter 13 Plan, or if you want the Court to consider your views on the Objection, then on or before, you or your attorney must:

File with the Court an answer, explaining your position at:

**Clerk**
**U.S. Bankruptcy Court**
**401 Market Street, 2nd Floor**
**Camden, NJ 08101**

If you mail your response to the Court for filing, you must mail it early enough so that the Court will *receive* it on or before the date stated above.

You must also mail a copy to:

Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103

Isabel C. Balboa, Trustee
Cherry Tree Corporate Cen, 535 Route 38 - Suite 580
Cherry Hill, NJ 08002

Attend the hearing scheduled to be held on 01/08/2020 in the CAMDEN Bankruptcy Court, at the following address:

**U.S. Bankruptcy Court**
**401 Market Street, 2nd Floor**
**Camden, NJ 08101**

If you or your attorney do not make these steps, the Court may decide that you do not oppose the relief sought in the Objection and may enter an Order granting that relief.

Date: November 25, 2019

/s/ Robert J. Davidow
Robert J. Davidow, Esq.
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
Tel: 856-813-5500 Ext. 47960
Fax: 856-813-5501
Email: Robert.Davidow@phelanhallinan.com

**File No. 824018**
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard
Philadelphia, PA 19103
856-813-5500
FAX Number 856-813-5501
LAKEVIEW LOAN SERVICING, LLC

| | |
|---|---|
| In Re:<br><br>      THOMAS F. GATTINELLA<br><br><br><br>Debtor | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>CAMDEN VICINAGE<br><br>Chapter 13<br><br>Case No. 19-15850 - ABA<br><br>Hearing Date: 01/08/2020 |

The undersigned, Phelan Hallinan Diamond & Jones, PC, attorneys for Secured Creditor,

LAKEVIEW LOAN SERVICING, LLC, the holder of a Mortgage on debtor residence located at

173 FRIES MILL ROAD, TURNERSVILLE, NJ 08012 hereby objects to the Confirmation of the

debtor proposed Chapter 13 Plan on the following grounds:

    1.      On March 6, 2018, Movant filed Proof of Claim listing pre-petition arrears

in the amount of $39,694.68. A copy of the Proof of Claim is attached hereto as Exhibit "A"

and made a part hereof.

    2.      Debtor's Plan fails to cure the delinquency pursuant to 11 U.S.C.

§1322(b)(5).

    3.      Debtor's Plan calls for the sale of the property. There is no documentation to

support such a proposal. The proposed sale of the property is speculative in nature. A copy

of the Debtor's Plan is attached hereto as Exhibit B. Movant objects to Debtor's Plan as it is

severely underfunded. The Plan should be amended to fully fund the arrears owed to

Movant during the term of the Plan rather than rely on speculation that the property will be

sold at a future date.

4.      Furthermore, Movant requests that the full monthly payment of $2,405.77 be timely tendered while the Debtor pursues a prospective sale. In the alternative, Debtor's Plan should be amended to state the property will be surrendered. Confirmation of Debtor's Plan should be denied.

WHEREFORE, LAKEVIEW LOAN SERVICING, LLC respectfully requests that the Confirmation of Debtor Plan be denied.

/s/ Robert J. Davidow
Robert J. Davidow, Esq.
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
Tel: 856-813-5500 Ext. 47960
Fax: 856-813-5501
Email: Robert.Davidow@phelanhallinan.com

Dated: November 25, 2019

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

824018
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
856-813-5500
Attorneys for LAKEVIEW LOAN SERVICING, LLC

| In Re:<br><br>THOMAS F. GATTINELLA | Case No:  19-15850 - ABA<br><br>Hearing Date: 01/08/2020<br><br>Judge:  Andrew B. Altenburg, Jr<br><br>Chapter:  13 |

## CERTIFICATION OF SERVICE

1.     I, Chris Villegas:

☐ represent the _____ in the above-captioned matter.

☒ am the secretary/paralegal for Phelan Hallinan Diamond & Jones, PC, who represents LAKEVIEW LOAN SERVICING, LLC in the above captioned matter.

☐ am the _____ in the above case and am representing myself.

2.     On November 25, 2019 I sent a copy of the following pleadings and/or documents to the parties listed below:

     **Objection to Plan**

3.     I hereby certify under penalty of perjury that the above documents were sent using the mode of service indicated.


Dated:  _November 25, 2019_____          /s/  _Chris Villegas_____
                                                              Chris Villegas

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Thomas F. Gattinella<br>173 Fries Mill Road, Turnersville, NJ 08012 | Debtor | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☐ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |
| Steven N. Taieb, Esquire<br>1155 Route 73 Ste 11<br>Mount Laurel, NJ 08054 | Debtor's Attorney | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |
| Isabel C. Balboa, Trustee<br>Cherry Tree Corporate Cen<br>535 Route 38 - Suite 580<br>Cherry Hill, NJ 08002 | Trustee | ☐ Hand-delivered<br><br>☐ Regular Mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |
| U.S. Trustee<br>US Dept of Justice<br>Office of the US Trustee<br>One Newark Center Ste 2100<br>Newark, NJ 07102 | U.S. Trustee | ☐ Hand-delivered<br><br>☐ Regular Mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |

* May account for service by fax or other means as authorized by the court through the issuance of an Order Shortening Time.

# Exhibit "A"

**Fill in this information to identify the case:**

Debtor 1      Thomas F. Gattinella

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the District of New Jersey

Case number    19-15850 ABA

## Official Form 410

# *Proof of Claim*

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| **Part 1:** | **Identify the Claim** |
| --- | --- |

| | |
| --- | --- |
| 1. **Who is the current creditor?** | Lakeview Loan Servicing, LLC <br><br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor |
| 2. **Has this claim been acquired from someone else?** | ☒ No <br> ☐ Yes.  From whom? |

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| **M&T Bank** <br> Name | **M&T Bank: ATTN: Payment Processing** <br> Name |
| **P.O. Box 840** <br> Number        Street | **P.O. Box 1288** <br> Number        Street |
| **Buffalo, NY 14240-0840** <br> City                State              ZIP Code | **Buffalo, NY 14240-1288** <br> City                State              ZIP Code |
| Contact phone | Contact phone |
| Contact email | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| | |
| --- | --- |
| 4. **Does this claim amend one already filed?** | ☒ No <br> ☐ Yes.  Claim number on court claims registry (if known)_____        Filed on _____ <br> MM  / DD  / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No <br> ☐ Yes.  Who made the earlier filing? |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: **2085** |
| 7. **How much is this claim?** | $ 252,152.36 **Does this amount include interest or other charges?**<br><br>☐ No<br>☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A). |
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Money loaned _____ |
| 9. **Is all or part of the claim secured?** | ☐ No<br>☒ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br><br>☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**  173 Fries Mill Rd Turnersville, NJ 08012<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $_____<br>**Amount of the claim that is secured:** $252,152.36<br>**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ 39,694.68 _____<br><br>**Annual Interest Rate** (when case was filed) 3.750%<br>☒ Fixed<br>☐ Variable |
| 10. **Is this claim based on a lease?** | ☒ No<br><br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____ |
| 11. **Is this claim subject to a right of setoff?** | ☒ No<br><br>☐ Yes. Identify the property: _____ |

242

| | | | Amount entitled to priority |
|---|---|---|---|

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check all that apply:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies.   $ _____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:**   **Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   <u>05/29/2019</u>
                   MM / DD / YYYY

/s/ Denise Carlon, Esquire
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Denise Carlon, Esq. | | |
| | First name | Middle name | Last name |
| Title | Bankruptcy Attorney | | |
| Company | <u>KML Law Group, P.C.</u> | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | <u>216</u>     <u>Haddon Avenue Suite 406</u> | | |
| | Number   Street | | |
| | <u>Westmont</u> | <u>NJ</u> | <u>08108</u> |
| | City | State | ZIP Code |
| Contact phone | <u>201-549-2363</u> | Email | dcarlon@kmllawgroup.com |

243

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number: | 19-15850-ABA | Principal Balance: | $223,107.54 | Principal & interest due: | $17,089.76 | Principal & interest: | $1,068.11 |
| Debtor 1: | Thomas F. Gattinella | Interest due: | $11,636.72 | Prepetition fees due: | $30.00 | Monthly escrow: | $1,185.18 |
| Debtor 2: | | Prepetition fees due: | $30.00 | Escrow deficiency for funds advanced: | $17,378.10 | Private mortgage insurance: | $152.48 |
| Last 4 digits to identify: | 2085 | Escrow deficiency for funds advanced | $17,378.10 | Projected escrow shortage: | $5,196.82 | Total monthly payment: | $2,405.77 |
| Creditor: | Lakeview Loan Servicing, LLC | Less total funds on hand: | $0.00 | Less funds on hand: | $0.00 | | |
| Servicer: | M & T Bank | Total Debt: | $252,152.36 | Total prepetition arrearage | $39,694.68 | | |
| Fixed accrual/daily simple | Fixed | | | | | | |

**Part 5: Loan Payment History from First Date of Default**

| | | Account Activity | | | | | Prin, int & esc past due balance | How funds were applied/Amount incurred | | | | | Balance after amount received or incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | Contractual payment amount | Funds Received | Amount incurred | Description | | Contractual Due Date | | Amount to Principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal Balance | Accrued interest balance | Escrow balance | Fees/Charges balance | Unapplied funds balance |
| Balances | | | | | | | $0.00 | | | | | | $227,469.24 | -$311.20 | $0.00 | $0.00 | |
| 12/01/16 | $2,527.86 | | | Payment Due | | 12/1/2016 | $2,527.86 | | | | | | $227,469.24 | -$311.20 | $0.00 | $0.00 | |
| 01/01/17 | $2,527.86 | | | Payment Due | | 12/1/2016 | $5,055.72 | | | | | | $227,469.24 | -$311.20 | $0.00 | $0.00 | |
| 01/04/17 | | | -$162.00 | Mip Disbursement | | 12/1/2016 | $5,055.72 | | | -$162.00 | | | $227,469.24 | -$473.20 | $0.00 | $0.00 | |
| 01/13/17 | | | -$101.11 | Late Charge Assessed | | 12/1/2016 | $5,055.72 | | | | -$101.11 | | $227,469.24 | -$473.20 | $0.00 | $101.11 | |
| 01/13/17 | | $2,628.97 | | Payment | | 1/1/2017 | $2,527.86 | $357.27 | $710.84 | $1,459.75 | $101.11 | $0.00 | $227,111.97 | $986.55 | $0.00 | $0.00 | |
| 01/19/17 | | | -$3,027.25 | Tax Disbursement | | 1/1/2017 | $2,527.86 | | | -$3,027.25 | | | $227,111.97 | -$2,040.70 | $0.00 | $0.00 | |
| 01/31/17 | | | -$5.00 | Late Charge Assessed | | 1/1/2017 | $2,527.86 | | | | -$5.00 | | $227,111.97 | -$2,040.70 | $5.00 | $0.00 | |
| 01/31/17 | | $2,532.86 | | Payment | | 2/1/2017 | $0.00 | $358.39 | $709.72 | $1,459.75 | $5.00 | $0.00 | $226,753.58 | -$580.95 | $0.00 | $0.00 | |
| 02/01/17 | $2,527.86 | | | Payment Due | | 2/1/2017 | $2,527.86 | | | | | | $226,753.58 | -$580.95 | $0.00 | $0.00 | |
| 02/02/17 | | | -$162.00 | Mip Disbursement | | 2/1/2017 | $2,527.86 | | | -$162.00 | | | $226,753.58 | -$742.95 | $0.00 | $0.00 | |
| 02/17/17 | | | -$101.11 | Late Charge Assessed | | 2/1/2017 | $2,527.86 | | | | -$101.11 | | $226,753.58 | -$742.95 | $0.00 | $101.11 | |
| 03/01/17 | $2,527.86 | | | Payment Due | | 2/1/2017 | $5,055.72 | | | | | | $226,753.58 | -$742.95 | $0.00 | $101.11 | |
| 03/02/17 | | | -$158.94 | Mip Disbursement | | 2/1/2017 | $5,055.72 | | | -$158.94 | | | $226,753.58 | -$901.89 | $0.00 | $101.11 | |
| 03/17/17 | | | -$101.11 | Late Charge Assessed | | 2/1/2017 | $5,055.72 | | | | -$101.11 | | $226,753.58 | -$901.89 | $0.00 | $202.22 | |
| 04/01/17 | $2,527.86 | | | Payment Due | | 2/1/2017 | $7,583.58 | | | | | | $226,753.58 | -$901.89 | $0.00 | $202.22 | |
| 04/04/17 | | | -$158.94 | Mip Disbursement | | 2/1/2017 | $7,583.58 | | | -$158.94 | | | $226,753.58 | -$1,060.83 | $0.00 | $202.22 | |
| 04/17/17 | | | -$101.11 | Late Charge Assessed | | 2/1/2017 | $7,583.58 | | | | -$101.11 | | $226,753.58 | -$1,060.83 | $0.00 | $303.33 | |
| 04/19/17 | | | -$3,042.68 | Tax Disbursement | | 2/1/2017 | $7,583.58 | | | -$3,042.68 | | | $226,753.58 | -$4,103.51 | $0.00 | $303.33 | |
| 04/21/17 | | | -$5.00 | Late Charge Assessed | | 2/1/2017 | $7,583.58 | | | | -$5.00 | | $226,753.58 | -$4,103.51 | $5.00 | $308.33 | |
| 04/21/17 | | $5,060.72 | | Payment | | 3/1/2017 | $5,055.72 | $359.51 | $708.60 | $1,459.75 | $5.00 | $2,527.86 | $226,394.07 | -$2,643.76 | $303.33 | $2,527.86 | |
| 04/21/17 | | | | Payment | | 4/1/2017 | $2,527.86 | $360.63 | $707.48 | $1,459.75 | | -$2,527.86 | $226,033.44 | -$1,184.01 | $303.33 | $0.00 | |
| 05/01/17 | $2,527.86 | | | Payment Due | | 4/1/2017 | $5,055.72 | | | | | | $226,033.44 | -$1,184.01 | $303.33 | $0.00 | |
| 05/02/17 | | | -$158.94 | Mip Disbursement | | 4/1/2017 | $5,055.72 | | | -$158.94 | | | $226,033.44 | -$1,342.95 | $303.33 | $0.00 | |

| Date | | | Description | Date | Amount | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/17/17 | | -$101.11 | Late Charge Assessed | 4/1/2017 | $5,055.72 | | | -$101.11 | | $226,033.44 | -$1,342.95 | $404.44 | $0.00 |
| 06/01/17 | $2,527.86 | | Payment Due | 4/1/2017 | $7,583.58 | | | | | $226,033.44 | -$1,342.95 | $404.44 | $0.00 |
| 06/02/17 | | -$158.94 | Mip Disbursement | 4/1/2017 | $7,583.58 | | | -$158.94 | | $226,033.44 | -$1,501.89 | $404.44 | $0.00 |
| 06/19/17 | | -$101.11 | Late Charge Assessed | 4/1/2017 | $7,583.58 | | | -$101.11 | | $226,033.44 | -$1,501.89 | $505.55 | $0.00 |
| 07/01/17 | $2,527.86 | | Payment Due | 4/1/2017 | $10,111.44 | | | | | $226,033.44 | -$1,501.89 | $505.55 | $0.00 |
| 07/05/17 | | -$158.94 | Mip Disbursement | 4/1/2017 | $10,111.44 | | | -$158.94 | | $226,033.44 | -$1,660.83 | $505.55 | $0.00 |
| 07/17/17 | | -$101.11 | Late Charge Assessed | 4/1/2017 | $10,111.44 | | | -$101.11 | | $226,033.44 | -$1,660.83 | $606.66 | $0.00 |
| 07/31/17 | | -$3,078.80 | Tax Disbursement | 4/1/2017 | $10,111.44 | | | -$3,078.80 | | $226,033.44 | -$4,739.63 | $606.66 | $0.00 |
| 08/01/17 | $2,527.86 | | Payment Due | 4/1/2017 | $12,639.30 | | | | | $226,033.44 | -$4,739.63 | $606.66 | $0.00 |
| 08/02/17 | | -$158.94 | Mip Disbursement | 4/1/2017 | $12,639.30 | | | -$158.94 | | $226,033.44 | -$4,898.57 | $606.66 | $0.00 |
| 08/17/17 | | -$101.11 | Late Charge Assessed | 4/1/2017 | $12,639.30 | | | -$101.11 | | $226,033.44 | -$4,898.57 | $707.77 | $0.00 |
| 08/24/17 | | -$3,936.00 | Insurance Disbursement | 4/1/2017 | $12,639.30 | | | -$3,936.00 | | $226,033.44 | -$8,834.57 | $707.77 | $0.00 |
| 08/28/17 | $3,751.00 | | Escrow Payment | 4/1/2017 | $12,639.30 | | | $3,751.00 | $0.00 | $226,033.44 | -$5,083.57 | $707.77 | $0.00 |
| 09/01/17 | $2,527.86 | | Payment Due | 4/1/2017 | $15,167.16 | | | | | $226,033.44 | -$5,083.57 | $707.77 | $0.00 |
| 09/05/17 | | -$158.94 | Mip Disbursement | 4/1/2017 | $15,167.16 | | | -$158.94 | | $226,033.44 | -$5,242.51 | $707.77 | $0.00 |
| 09/18/17 | | -$101.11 | Late Charge Assessed | 4/1/2017 | $15,167.16 | | | -$101.11 | | $226,033.44 | -$5,242.51 | $808.88 | $0.00 |
| 10/01/17 | $2,527.86 | | Payment Due | 4/1/2017 | $17,695.02 | | | | | $226,033.44 | -$5,242.51 | $808.88 | $0.00 |
| 10/03/17 | | -$158.94 | Mip Disbursement | 4/1/2017 | $17,695.02 | | | -$158.94 | | $226,033.44 | -$5,401.45 | $808.88 | $0.00 |
| 10/20/17 | | -$3,078.80 | Tax Disbursement | 4/1/2017 | $17,695.02 | | | -$3,078.80 | | $226,033.44 | -$8,480.25 | $808.88 | $0.00 |
| 10/27/17 | | -$16.25 | Property Inspection | 4/1/2017 | $17,695.02 | | | -$16.25 | | $226,033.44 | -$8,480.25 | $825.13 | $0.00 |
| 11/01/17 | $2,527.86 | | Payment Due | 4/1/2017 | $20,222.88 | | | | | $226,033.44 | -$8,480.25 | $825.13 | $0.00 |
| 11/02/17 | | -$158.94 | Mip Disbursement | 4/1/2017 | $20,222.88 | | | -$158.94 | | $226,033.44 | -$8,639.19 | $825.13 | $0.00 |
| 11/13/17 | | -$3,936.00 | Insurance Disbursement | 4/1/2017 | $20,222.88 | | | -$3,936.00 | | $226,033.44 | -$12,575.19 | $825.13 | $0.00 |
| 11/17/17 | | -$40.00 | Attorney Cost | 4/1/2017 | $20,222.88 | | | -$40.00 | | $226,033.44 | -$12,575.19 | $865.13 | $0.00 |
| 11/17/17 | | -$75.00 | Attorney Cost | 4/1/2017 | $20,222.88 | | | -$75.00 | | $226,033.44 | -$12,575.19 | $940.13 | $0.00 |
| 11/17/17 | | -$250.00 | Attorney Cost | 4/1/2017 | $20,222.88 | | | -$250.00 | | $226,033.44 | -$12,575.19 | $1,190.13 | $0.00 |
| 11/17/17 | | -$297.50 | Attorney Fees | 4/1/2017 | $20,222.88 | | | -$297.50 | | $226,033.44 | -$12,575.19 | $1,487.63 | $0.00 |
| 11/17/17 | | -$743.75 | Attorney Fees | 4/1/2017 | $20,222.88 | | | -$743.75 | | $226,033.44 | -$12,575.19 | $2,231.38 | $0.00 |
| 11/20/17 | | -$75.00 | Prop Preserve | 4/1/2017 | $20,222.88 | | | -$75.00 | | $226,033.44 | -$12,575.19 | $2,306.38 | $0.00 |
| 11/20/17 | | -$500.00 | Prop Preserve | 4/1/2017 | $20,222.88 | | | -$500.00 | | $226,033.44 | -$12,575.19 | $2,806.38 | $0.00 |
| 12/01/17 | $2,574.01 | | Payment Due | 4/1/2017 | $22,796.89 | | | | | $226,033.44 | -$12,575.19 | $2,806.38 | $0.00 |
| 12/04/17 | | -$158.94 | Mip Disbursement | 4/1/2017 | $22,796.89 | | | -$158.94 | | $226,033.44 | -$12,734.13 | $2,806.38 | $0.00 |
| 01/01/18 | $2,574.01 | | Payment Due | 4/1/2017 | $25,370.90 | | | | | $226,033.44 | -$12,734.13 | $2,806.38 | $0.00 |

| Date | | | Description | Due Date | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/03/18 | | -$158.94 | Mip Disbursement | 4/1/2017 | $25,370.90 | | | | -$158.94 | | $226,033.44 | -$12,893.07 | $2,806.38 | $0.00 |
| 01/25/18 | | -$16.25 | Property Inspection | 4/1/2017 | $25,370.90 | | | | -$16.25 | | $226,033.44 | -$12,893.07 | $2,822.63 | $0.00 |
| 01/29/18 | | -$3,060.74 | Tax Disbursement | 4/1/2017 | $25,370.90 | | | | -$3,060.74 | | $226,033.44 | -$15,953.81 | $2,822.63 | $0.00 |
| 02/01/18 | $2,574.01 | | Payment Due | 4/1/2017 | $27,944.91 | | | | | | $226,033.44 | -$15,953.81 | $2,822.63 | $0.00 |
| 02/02/18 | | -$158.94 | Mip Disbursement | 4/1/2017 | $27,944.91 | | | | -$158.94 | | $226,033.44 | -$16,112.75 | $2,822.63 | $0.00 |
| 02/23/18 | | -$16.25 | Property Inspection | 4/1/2017 | $27,944.91 | | | | -$16.25 | | $226,033.44 | -$16,112.75 | $2,838.88 | $0.00 |
| 03/01/18 | $2,574.01 | | Payment Due | 4/1/2017 | $30,518.92 | | | | | | $226,033.44 | -$16,112.75 | $2,838.88 | $0.00 |
| 03/02/18 | | -$155.77 | Mip Disbursement | 4/1/2017 | $30,518.92 | | | | -$155.77 | | $226,033.44 | -$16,268.52 | $2,838.88 | $0.00 |
| 03/26/18 | | -$16.25 | Property Inspection | 4/1/2017 | $30,518.92 | | | | -$16.25 | | $226,033.44 | -$16,268.52 | $2,855.13 | $0.00 |
| 04/01/18 | $2,574.01 | | Payment Due | 4/1/2017 | $33,092.93 | | | | | | $226,033.44 | -$16,268.52 | $2,855.13 | $0.00 |
| 04/03/18 | | -$155.77 | Mip Disbursement | 4/1/2017 | $33,092.93 | | | | -$155.77 | | $226,033.44 | -$16,424.29 | $2,855.13 | $0.00 |
| 04/13/18 | | -$3,060.74 | Tax Disbursement | 4/1/2017 | $33,092.93 | | | | -$3,060.74 | | $226,033.44 | -$19,485.03 | $2,855.13 | $0.00 |
| 04/26/18 | | -$16.25 | Property Inspection | 4/1/2017 | $33,092.93 | | | | -$16.25 | | $226,033.44 | -$19,485.03 | $2,871.38 | $0.00 |
| 05/01/18 | $2,574.01 | | Payment Due | 4/1/2017 | $35,666.94 | | | | | | $226,033.44 | -$19,485.03 | $2,871.38 | $0.00 |
| 05/02/18 | | -$155.77 | Mip Disbursement | 4/1/2017 | $35,666.94 | | | | -$155.77 | | $226,033.44 | -$19,640.80 | $2,871.38 | $0.00 |
| 05/15/18 | $6,722.03 | | Payment | 5/1/2017 | $33,139.08 | $361.76 | $706.35 | $1,459.75 | | $4,194.17 | $225,671.68 | -$18,181.05 | $2,871.38 | $4,194.17 |
| 05/15/18 | | | Payment | 6/1/2017 | $30,611.22 | $362.89 | $705.22 | $1,459.75 | | -$2,527.86 | $225,308.79 | -$16,721.30 | $2,871.38 | $1,666.31 |
| 05/21/18 | | | Payment Reversal | 5/1/2017 | $33,139.08 | -$362.89 | -$705.22 | -$1,459.75 | | $2,527.86 | $225,671.68 | -$18,181.05 | $2,871.38 | $4,194.17 |
| 05/21/18 | | | Payment Reversal | 4/4/2017 | $35,666.94 | -$361.76 | -$706.35 | -$1,459.75 | | $2,527.86 | $226,033.44 | -$19,640.80 | $2,871.38 | $6,722.03 |
| 05/29/18 | | -$16.25 | Property Inspection | 4/4/2017 | $35,666.94 | | | | -$16.25 | | $226,033.44 | -$19,640.80 | $2,887.63 | $6,722.03 |
| 06/01/18 | $2,574.01 | | Payment Due | 4/4/2017 | $38,240.95 | | | | | | $226,033.44 | -$19,640.80 | $2,887.63 | $6,722.03 |
| 06/04/18 | | -$155.77 | Mip Disbursement | 4/4/2017 | $38,240.95 | | | | -$155.77 | | $226,033.44 | -$19,796.57 | $2,887.63 | $6,722.03 |
| 06/07/18 | $109.24 | | Payment Posted To Suspense | 4/4/2017 | $38,240.95 | | | | | $109.24 | $226,033.44 | -$19,796.57 | $2,887.63 | $6,831.27 |
| 06/07/18 | $486.52 | | Payment Posted To Suspense | 4/4/2017 | $38,240.95 | | | | | $486.52 | $226,033.44 | -$19,796.57 | $2,887.63 | $7,317.79 |
| 06/08/18 | | | Payment | 5/1/2017 | $35,713.09 | $361.76 | $706.35 | $1,459.75 | | -$2,527.86 | $225,671.68 | -$18,336.82 | $2,887.63 | $4,789.93 |
| 06/08/18 | | | Payment | 6/1/2017 | $33,185.23 | $362.89 | $705.22 | $1,459.75 | | -$2,527.86 | $225,308.79 | -$16,877.07 | $2,887.63 | $2,262.07 |
| 06/28/18 | | -$16.25 | Property Inspection | 6/1/2017 | $33,185.23 | | | | -$16.25 | | $225,308.79 | -$16,877.07 | $2,903.88 | $2,262.07 |
| 07/01/18 | $2,574.01 | | Payment Due | 6/1/2017 | $35,759.24 | | | | | | $225,308.79 | -$16,877.07 | $2,903.88 | $2,262.07 |
| 07/03/18 | | -$155.77 | Mip Disbursement | 6/1/2017 | $35,759.24 | | | | -$155.77 | | $225,308.79 | -$17,032.84 | $2,903.88 | $2,262.07 |
| 07/19/18 | | -$155.77 | Mip Disbursement | 6/1/2017 | $35,759.24 | | | | -$155.77 | | $225,308.79 | -$17,188.61 | $2,903.88 | $2,262.07 |
| 07/20/18 | $367.00 | | Escrow Payment | 6/1/2017 | $35,759.24 | | | $367.00 | | $0.00 | $225,308.79 | -$16,821.61 | $2,903.88 | $2,262.07 |
| 07/25/18 | $5,000.00 | | Payment | 7/1/2017 | $33,231.38 | $364.02 | $704.09 | $1,459.75 | | $2,472.14 | $224,944.77 | -$15,361.86 | $2,903.88 | $4,734.21 |
| 08/01/18 | $2,574.01 | | Payment Due | 7/1/2017 | $35,805.39 | | | | | | $224,944.77 | -$15,361.86 | $2,903.88 | $4,734.21 |

| Date | | | | Description | Date | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/09/18 | | | -$3,138.14 | Tax Disbursement | 7/1/2017 | $35,805.39 | | | | | -$3,138.14 | $224,944.77 | -$18,500.00 | $2,903.88 | $4,734.21 |
| 08/20/18 | | | | Payment | 8/1/2017 | $33,277.53 | $365.16 | $702.95 | $1,459.75 | | -$2,527.86 | $224,579.61 | -$17,040.25 | $2,903.88 | $2,206.35 |
| 08/20/18 | | | | Escrow Payment | 8/1/2017 | $33,277.53 | | | $595.76 | | -$595.76 | $224,579.61 | -$16,444.49 | $2,903.88 | $1,610.59 |
| 08/23/18 | | $16.25 | | Reclass Bk Insp | 8/1/2017 | $33,277.53 | | | | $16.25 | | $224,579.61 | -$16,444.49 | $2,887.63 | $1,610.59 |
| 08/23/18 | | $297.50 | | Reclass Bk Insp | 8/1/2017 | $33,277.53 | | | | $297.50 | | $224,579.61 | -$16,444.49 | $2,590.13 | $1,610.59 |
| 08/27/18 | | | -$14.00 | Bk Inspection | 8/1/2017 | $33,277.53 | | | | -$14.00 | | $224,579.61 | -$16,444.49 | $2,604.13 | $1,610.59 |
| 09/01/18 | $2,574.01 | | | Payment Due | 8/1/2017 | $35,851.54 | | | | | | $224,579.61 | -$16,444.49 | $2,604.13 | $1,610.59 |
| 09/05/18 | | | -$155.77 | Mip Disbursement | 8/1/2017 | $35,851.54 | | | | -$155.77 | | $224,579.61 | -$16,600.26 | $2,604.13 | $1,610.59 |
| 09/12/18 | | $205.41 | | Payment Posted To Suspense | 8/1/2017 | $35,851.54 | | | | | $205.41 | $224,579.61 | -$16,600.26 | $2,604.13 | $1,816.00 |
| 09/12/18 | | $914.82 | | Payment Posted To Suspense | 8/1/2017 | $35,851.54 | | | | | $914.82 | $224,579.61 | -$16,600.26 | $2,604.13 | $2,730.82 |
| 09/13/18 | | | | BK Reimnursement | 8/1/2017 | $35,851.54 | | | | $713.91 | -$713.91 | $224,579.61 | -$16,600.26 | $1,890.22 | $2,016.91 |
| 09/13/18 | | | | Escrow Payment | 8/1/2017 | $35,851.54 | | | $406.32 | | -$406.32 | $224,579.61 | -$16,193.94 | $1,890.22 | $1,610.59 |
| 09/26/18 | | | -$15.00 | Bk Inspection | 8/1/2017 | $35,851.54 | | | | -$15.00 | | $224,579.61 | -$16,193.94 | $1,905.22 | $1,610.59 |
| 10/01/18 | $2,574.01 | | | Payment Due | 8/1/2017 | $38,425.55 | | | | | | $224,579.61 | -$16,193.94 | $1,905.22 | $1,610.59 |
| 10/04/18 | | | -$155.77 | Mip Disbursement | 8/1/2017 | $38,425.55 | | | | -$155.77 | | $224,579.61 | -$16,349.71 | $1,905.22 | $1,610.59 |
| 10/12/18 | | $648.11 | | Payment Posted To Suspense | 8/1/2017 | $38,425.55 | | | | | $648.11 | $224,579.61 | -$16,349.71 | $1,905.22 | $2,258.70 |
| 10/12/18 | | $145.53 | | Payment Posted To Suspense | 8/1/2017 | $38,425.55 | | | | | $145.53 | $224,579.61 | -$16,349.71 | $1,905.22 | $2,404.23 |
| 10/12/18 | | $7,000.00 | | Payment Posted To Suspense | 8/1/2017 | $38,425.55 | | | | | $7,000.00 | $224,579.61 | -$16,349.71 | $1,905.22 | $9,404.23 |
| 10/15/18 | | | | Payment | 9/1/2017 | $35,897.69 | $366.30 | $701.81 | $1,459.75 | | -$2,527.86 | $224,213.31 | -$14,889.96 | $1,905.22 | $6,876.37 |
| 10/15/18 | | | | Payment | 10/1/2017 | $33,369.83 | $367.44 | $700.67 | $1,459.75 | | -$2,527.86 | $223,845.87 | -$13,430.21 | $1,905.22 | $4,348.51 |
| 10/17/18 | | | -$3,138.14 | Tax Disbursement | 10/1/2017 | $33,369.83 | | | | -$3,138.14 | | $223,845.87 | -$16,568.35 | $1,905.22 | $4,348.51 |
| 10/29/18 | | | -$15.00 | Bk Inspection | 10/1/2017 | $33,369.83 | | | | -$15.00 | | $223,845.87 | -$16,568.35 | $1,920.22 | $4,348.51 |
| 11/01/18 | $2,574.01 | | | Payment Due | 10/1/2017 | $35,943.84 | | | | | | $223,845.87 | -$16,568.35 | $1,920.22 | $4,348.51 |
| 11/02/18 | | | -$155.77 | Mip Disbursement | 10/1/2017 | $35,943.84 | | | | -$155.77 | | $223,845.87 | -$16,724.12 | $1,920.22 | $4,348.51 |
| 11/13/18 | | $273.29 | | Payment Posted To Suspense | 10/1/2017 | $35,943.84 | | | | | $273.29 | $223,845.87 | -$16,724.12 | $1,920.22 | $4,621.80 |
| 11/13/18 | | $1,217.11 | | Payment Posted To Suspense | 10/1/2017 | $35,943.84 | | | | | $1,217.11 | $223,845.87 | -$16,724.12 | $1,920.22 | $5,838.91 |
| 11/14/18 | | | | BK Reimnursement | 10/1/2017 | $35,943.84 | | | | $394.84 | -$394.84 | $223,845.87 | -$16,724.12 | $1,525.38 | $5,444.07 |
| 11/14/18 | | | | BK Reimnursement | 10/1/2017 | $35,943.84 | | | | $97.50 | -$97.50 | $223,845.87 | -$16,724.12 | $1,427.88 | $5,346.57 |
| 11/14/18 | | | | BK Reimnursement | 10/1/2017 | $35,943.84 | | | | $575.00 | -$575.00 | $223,845.87 | -$16,724.12 | $852.88 | $4,771.57 |
| 11/14/18 | | | | Late Charge Paid | 10/1/2017 | $35,943.84 | | | | $808.88 | -$808.88 | $223,845.87 | -$16,724.12 | $44.00 | $3,962.69 |
| 11/15/18 | | | | Payment | 11/1/2017 | $33,415.98 | $368.59 | $699.52 | $1,459.75 | | -$2,527.86 | $223,477.28 | -$15,264.37 | $44.00 | $1,434.83 |
| 12/01/18 | $2,574.01 | | | Payment Due | 11/1/2017 | $35,989.99 | | | | | | $223,477.28 | -$15,264.37 | $44.00 | $1,434.83 |
| 12/04/18 | | | -$155.77 | Mip Disbursement | 11/1/2017 | $35,989.99 | | | | -$155.77 | | $223,477.28 | -$15,420.14 | $44.00 | $1,434.83 |

| | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/05/18 | | | -$1,747.00 | Insurance Disbursement | 11/1/2017 | $35,989.99 | | | | -$1,747.00 | | | $223,477.28 | | -$17,167.14 | $44.00 | $1,434.83 |
| 12/14/18 | | $1,522.76 | | Payment Posted To Suspense | 11/1/2017 | $35,989.99 | | | | | | $1,522.76 | $223,477.28 | | -$17,167.14 | $44.00 | $2,957.59 |
| 12/14/18 | | $341.92 | | Payment Due | 11/1/2017 | $35,989.99 | | | | | | $341.92 | $223,477.28 | | -$17,167.14 | $44.00 | $3,299.51 |
| 01/01/19 | $2,898.72 | | | Payment Due | 11/1/2017 | $38,888.71 | | | | | | | $223,477.28 | | -$17,167.14 | $44.00 | $3,299.51 |
| 01/04/19 | | | -$155.77 | Mip Disbursement | 11/1/2017 | $38,888.71 | | | | -$155.77 | | | $223,477.28 | | -$17,322.91 | $44.00 | $3,299.51 |
| 01/07/19 | | $915.53 | | Payment Posted To Suspense | 11/1/2017 | $38,888.71 | | | | | | $915.53 | $223,477.28 | | -$17,322.91 | $44.00 | $4,215.04 |
| 01/08/19 | | | | Payment | 12/1/2017 | $36,360.85 | $369.74 | $698.37 | $1,459.75 | | | -$2,527.86 | $223,107.54 | | -$15,863.16 | $44.00 | $1,687.18 |
| 01/09/19 | | $205.57 | | Payment Posted To Suspense | 12/1/2017 | $36,360.85 | | | | | | $205.57 | $223,107.54 | | -$15,863.16 | $44.00 | $1,892.75 |
| 01/17/19 | | | -$3,099.44 | Tax Disbursement | 12/1/2017 | $36,360.85 | | | | -$3,099.44 | | | $223,107.54 | | -$18,962.60 | $44.00 | $1,892.75 |
| 01/25/19 | | | | Escrow Payment | 12/1/2017 | $36,360.85 | | | | $1,892.75 | | -$1,892.75 | $223,107.54 | | -$17,069.85 | $44.00 | $0.00 |
| 01/28/19 | | | $44.00 | Reclass Nr Insp | 12/1/2017 | $36,360.85 | | | | | $44.00 | | $223,107.54 | | -$17,069.85 | $0.00 | $0.00 |
| 02/01/19 | $2,898.72 | | | Payment Due | 12/1/2017 | $39,259.57 | | | | | | | $223,107.54 | | -$17,069.85 | $0.00 | $0.00 |
| 02/04/19 | | | -$155.77 | Mip Disbursement | 12/1/2017 | $39,259.57 | | | | -$155.77 | | | $223,107.54 | | -$17,225.62 | $0.00 | $0.00 |
| 02/05/19 | | | -$15.00 | Property Inspection | 12/1/2017 | $39,259.57 | | | | | -$15.00 | | $223,107.54 | | -$17,225.62 | $15.00 | $0.00 |
| 03/01/19 | $2,898.72 | | | Payment Due | 12/1/2017 | $42,158.29 | | | | | | | $223,107.54 | | -$17,225.62 | $15.00 | $0.00 |
| 03/04/19 | | | -$152.48 | Mip Disbursement | 12/1/2017 | $42,158.29 | | | | -$152.48 | | | $223,107.54 | | -$17,378.10 | $15.00 | $0.00 |
| 03/05/19 | | | -$15.00 | Fc Inspections | 12/1/2017 | $42,158.29 | | | | | -$15.00 | | $223,107.54 | | -$17,378.10 | $30.00 | $0.00 |
| 03/22/19 | | | | Bankruptcy Filed | 12/1/2017 | $42,158.29 | | | | | | | $223,107.54 | | -$17,378.10 | $30.00 | $0.00 |

**M&T Bank**

ESCROW ACCOUNT
DISCLOSURE STATEMENT

Please do not send mail to this address
P O Box 619063
Dallas, TX 75261-9063

THOMAS F GATTINELLA SR
173 FRIES MILL RD
TURNERSVILLE NJ 08012-2017

### Contact Us

| | |
|---|---|
| Customer Service: | 1-800-411-7627 |
| Property Tax: | 1-866-406-0949 |
| Property Insurance: | 1-888-882-1847 |
| Home Purchase or Refinancing: | 1-800-479-1992 |
| NMLS #381076 | |

**Correspondence Address:**

PO BOX 1288
BUFFALO, NY 14240-1288

https://onlinebanking.mtb.com

Loan Number:
Property Address: 173 FRIES MILL RD
TURNERSVILLE NJ, 08012
Statement Date: 04/01/19

Dear Customer

As your mortgage partner  we strive to exceed your servicing expectations  We are providing you with the following statement which details your escrow account activity  Please refer to our Frequently Asked Questions  page 4  or call one of the appropriate customer service numbers referenced above with any questions or concerns

**Based on our review, you have a surplus.**

This surplus was caused by changes in your taxes  insurance or escrow deposits Your Account History  page 2  shows what has already happened on your account  To see what we anticipate happening with your account over the next 12 months  turn to Projected Escrow Payments  page 3

### Your Mortgage Payment Options

As a result of this analysis, we have determined your payment amount will change

| Payment Information | Current Monthly Payment | New Monthly Payment for 04/01/2019 |
|---|---|---|
| Principal & Interest: | $1,068 11 | $1,068 11 |
| Escrow  Payment: | $1,516 92 | $1,337 66 |
| Other: | -$11 02 | $0 00 |
| Total Payment: | $2,574 01 | $2,405 77 |

INTERNET REPRINT

The escrow surplus will be refunded to you under separate cover within the next few weeks, provided that all of your payments are presently up-to-date  Once you become current, please contact us to request a refund

Case 19-15850-ABA    Claim 47 Filed 11/25/19    Desc Main Document    Page 16 of 52

Please remember, as your taxes and/or insurance increase on an annual basis, the escrow portion of your payment may increase
If you have any questions about this Escrow Analysis, please call our Customer Service Department toll free at 1-800-411-7627

| Month | Projected Payment to Escrow | Actual Payment to Escrow | Description | Projected Disbursement | Actual Disbursement | Projected Balance | Actual Balance |
|-------|-----|-----|-------------|------|------|------|------|
| | | | **Beginning Balance** | | | $5,444.56 | -$17,167.14 |
| Jan 19 | $1,516.92 | $3,352.50 * | Risk Bsd FHA | $155.77 | * | $6,805.71 | -$13,814.64 |
| Jan 19 | | | County Tax | $3,060.74 | $3,099.44 * | $3,744.97 | -$16,914.08 |
| Jan 19 | | | Risk Bsd FHA | | $155.77 * | $3,744.97 | -$17,069.85 |
| Feb 19 | $1,516.92 | * | Risk Bsd FHA | $155.77 | $155.77 | $5,106.12 | -$17,225.62 |
| Mar 19 | $1,516.92 | $25,068.53 * | Risk Bsd FHA | $155.77 | * | $6,467.27 | $7,842.91 |
| Mar 19 | | | Risk Bsd FHA | | $152.48 * | $6,467.27 | $7,690.43 |

The total amount of escrow payments received during this period was $28,421 03 and the total escrow disbursements were $3,563 46

An asterisk (*) indicates a difference from a previous estimate either in the date or the amount of the deposit/disbursement
** This section may also reflect anticipated escrow activity that has not yet occurred prior to the effective date of this analysis

Borrower Paid Mortgage Insurance Premium: Your mortgage loan requires a borrower paid mortgage insurance premium ("MIP"). MIP is insurance
from the Federal Housing Administration ("FHA") that protects lenders against loss in the event a borrower defaults on a mortgage.

**Effective for all loans closed on or after January 1, 2001, FHA annual MIP will be automatically cancelled under the following conditions:**

**Loans with FHA case numbers assigned before June 3, 2013:**
Mortgage loan terms greater than 15 years: the annual MIP will be cancelled when the loan to value ratio reaches 78%, provided the
mortgagor has paid the annual mortgage insurance premium for at least five years.
Mortgage loan terms less than or equal to 15 years with a loan to value ratio greater than 78%: the annual MIP will be cancelled when
the loan to value ratio reaches 78%.

**FHA will determine when you have reached the 78% loan to value ratio based on the lower of the sales price or appraised value at origination.** New appraised values will not be considered. Cancellation of the annual mortgage insurance premium will normally be based
on the scheduled amortization of the loan. However, in cases where additional payments have been applied to the loan balance as a
prepayment, cancellation can be based on the actual amortization of the loan. If you have prepaid and believe you have met the
requirements for cancelling the FHA insurance, please send a written request to us at P.O. Box 1288, Buffalo, NY 14240.

**Loans with FHA case numbers assigned on or after June 3, 2013:**
Mortgage loan terms greater than 15 years with loan to value ratio greater than 90%: duration of the annual MIP is the loan term.
Mortgage loan terms greater than 15 years with loan to value ratio less than or equal to 90%: duration of the annual MIP is 11 years.
Mortgage loan terms less than or equal to 15 years with loan to value ratio greater than 90%: duration of the annual MIP is the loan term.
Mortgage loan terms less than or equal to 15 years with loan to value ratio less than or equal to 90%: duration of the annual MIP is 11
years.

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this
statement is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for
such obligation. However, M&T Bank retains rights under its security instrument, including the right to foreclose its lien.

## Projected Escrow Payments Over the Next 12 Months



### Anticipated Annual Disbursements

| | |
|---|---|
| Mortgage Ins: | $1,829 76 |
| County Tax: | $12,475 16 |
| Hazard Ins: | $1,747 00 |
| Total: | $16,051 92 |

The cushion allowed by federal law (RESPA) is two times your monthly escrow payment (excluding MIP/PMI), unless state law specifies a lower amount

### Projected Escrow Balance Summary

M&T Bank expects to pay $16,051 92 over the next 12 months

Here's how to calculate your new  monthly escrow payment:

| | |
|---|---|
| Total Taxes and Insurance: | $16,051 92 |
| Divided by 12 months: | $1,337 66 |
| New Monthly Escrow Payment: | $1,337 66 |

Projections for the coming year. The following summary shows anticipated activity in your escrow account for the next twelve months, which was used to calculate your payment above

| Month | Monthly Escrow Payment | Amount Scheduled to be Paid | Description | Projection Based On Current Balance | Projection Based On Required Balance |
|---|---|---|---|---|---|
| | | | Beginning Balance | $7,690 43 | $5,196 82 |
| Apr 19 | $1,337 66 | $152 48 | Risk Bsd FHA | $8,875 61 | $6,382 00 |
| Apr 19 | | $3,099 44 | County Tax | $5,776 17 | $3,282 56 |
| May 19 | $1,337 66 | $152 48 | Risk Bsd FHA | $6,961 35 | $4,467 74 |
| Jun 19 | $1,337 66 | $152 48 | Risk Bsd FHA | $8,146 53 | $5,652 92 |
| Jul 19 | $1,337 66 | $152 48 | Risk Bsd FHA | $9,331 71 | $6,838 10 |
| Jul 19 | | $3,138 14 | County Tax | $6,193 57 | $3,699 96 |
| Aug 19 | $1,337 66 | $152 48 | Risk Bsd FHA | $7,378 75 | $4,885 14 |
| Aug 19 | | $1,747 00 | Hazard Ins | $5,631 75 | $3,138 14 |
| Sep 19 | $1,337 66 | $152 48 | Risk Bsd FHA | $6,816 93 | $4,323 32 |
| Oct 19 | $1,337 66 | $152 48 | Risk Bsd FHA | $8,002 11 | $5,508 50 |
| **Oct 19** | | **$3,138.14** | **County Tax** | **$4,863.97** | **$2,370.36** |
| Nov 19 | $1,337 66 | $152 48 | Risk Bsd FHA | $6,049 15 | $3,555 54 |
| Dec 19 | $1,337 66 | $152 48 | Risk Bsd FHA | $7,234 33 | $4,740 72 |
| Jan 20 | $1,337 66 | $152 48 | Risk Bsd FHA | $8,419 51 | $5,925 90 |
| Jan 20 | | $3,099 44 | County Tax | $5,320 07 | $2,826 46 |
| Feb 20 | $1,337 66 | $152 48 | Risk Bsd FHA | $6,505 25 | $4,011 64 |
| Mar 20 | $1,337 66 | $152 48 | Risk Bsd FHA | $7,690 43 | $5,196 82 |

### Escrow Requirements, New Mortgage Payment and Anticipated Annual Disbursements

| | |
|---|---|
| Projected Beginning Balance | $7,690.43 |
| -Required Minimum Balance | $5,196.82 |
| Surplus Amount | $4,987.22 |

Your lowest monthly escrow balance for the next 12 months should reach $2,370.36, which equals a reserve of two months escrow deposit. In order to reach this low point, your required escrow balance after your 3/19 payment should be $5,196.82, whereas your actual escrow balance is $7,690.43.  The difference, $4,987.22, represents an escrow surplus.

This amount will be refunded to you under separate cover within the next few weeks ONLY if your payments are up-to-date as of the date of the analysis. If your payments are not up-to-date at the time of analysis, you are entitled to have the available surplus refunded to you when you account is current.  At that time, please send your written request to M&T Bank, ATTN: Escrow Department P.O. Box 1288, Buffalo, NY 14240-1288.

**This has been adjusted for the bankruptcy proof of claim.

**Mortgagor Guide to Frequently Asked Escrow Analysis Questions (FAQ Document)**

- **What is an escrow analysis and why am I receiving this document?**
Federal mortgage laws require all mortgage lenders to perform an escrow analysis on all loans minimally once a year.  As a result, M&T Bank conducts an escrow analysis accordingly. The analysis is a calculation of your escrowed items – when they are due, the frequency of pay (annually, semi-annually, and quarterly) and the amount of the payment.  This then determines if we are over collecting, under collecting or accurately collecting funds to make these payments on your behalf.
There are several reasons why an off-cycle analysis is performed.  Common reasons include: loan is acquired or transferred, customer request (new exemption or adjusted bill issued), change in insurance or tax due dates.

- **What is an escrow account?**
An escrow account is an account set inside your mortgage account.  On a monthly basis funds you remit are placed in the account, held and when the time comes, paid to your tax and/ or insurance agency.  A full accounting of these funds appears on the following statements: monthly mortgage statement, year-end statement and your escrow analysis statement. Typically the payments made are to your real estate tax municipalities and insurance agent.  Other payments may be made according to your mortgage agreement.

- **What is an escrow payment?**
The portion of your monthly payment remitted which is held and then used to pay your escrowed items as they become due.

- **How do you determine the required beginning escrow balance?**
The portion of your monthly payment remitted which is held and then used to pay your escrowed items as they become due.

- **What is an escrow reserve also known as a cushion?**
An escrow reserve also known as a cushion is the amount of money collected in the escrow to cover any unanticipated increases in your real estate tax or insurance premium payment.  It acts as a buffer and prevents your escrow account from being overdrawn.  An escrow reserve exists on your account unless your mortgage documents or state law applies.

- **How is an escrow analysis completed?**
We itemize all applicable disbursements such as the real estate property tax and insurance premium which are scheduled to be paid on your behalf in the next 12 months.  We take the total and divide the payment by 12 payments.  The total amount of the disbursements divided by 12 is equal to your monthly escrow payment.

- **Will my escrow payment amount remain the same if I remit the entire shortage amount at once?**
By paying the full shortage amount this will result in an adjustment to your account which will result in a payment with the smallest possible increase in your monthly mortgage payment. It's important to keep in mind any increase in your real estate taxes and/or insurance premium may cause your payment amount to change even if you pay your shortage amount.

- **If I would like to remit the shortage payment, what steps do I need to take?**
You may pay the entire shortage amount by returning the shortage coupon attached to the bottom of page 1 of your escrow analysis along with your check to: M&T Bank, Escrow Department, PO Box 64787, Baltimore, MD 21264-4787

- **What if I do not remit the shortage payment?**
If you do not wish to remit the entire shortage payment in one lump sum, you can instead remit the new payment amount over the next 12 months.  The escrow analysis calculation automatically spreads the shortage amount over the next 12 months.

- **Why did my monthly escrow payment amount change?**
There are a number of reasons why escrow payment amounts change.  Below are the most common reasons why the amount may change:
**Real Estate Tax –**
Tax rate and/or property's assessed value changed
Tax exemption status added, changed or removed
The payment of a supplemental tax bill or delinquent tax paid from escrow
New tax requirement
Tax(es) paid as a result of non-payment
**Insurance Premium(s) –**
Premium rate changed
Coverage changed
Additional premium paid but not anticipated to be paid from escrow, such as change in carrier
New insurance requirement
Lender paid insurance from escrow
Flood insurance map changed
**Payments –**
Monthly payments received were a different amount than what was expected. For example:
  - The monthly payments received were less than the amount requested, shorting the funding of escrow
  - Previous escrow shortage amount was not paid in full before new analysis

- **Information Regarding Insurance –**
Hazard insurance, also referred to as homeowner's insurance, is an insurance policy purchased to protect your property from certain hazards such as fire and theft. Policy coverage may vary. See your insurance policy information for details regarding your specific coverage(s).
If you decide to change your insurance carrier, send the new policy information to: M&T Bank, Its Successors and/or Assigns, PO Box 5738, Springfield, Ohio 45501-5738

Fax: 866-410-9956

Additional questions can be directed to 888-882-1847.

- **Information Regarding Real Estate Tax Bills –**
Where to mail your tax bill:

    M&T Bank
    PO Box 23628
    Rochester, NY 14692-9813
    FAX: 817-826-0675

# NOTE

FHA Case No.

JANUARY 19, 2016                    IRVING                          TEXAS
[Date]                              [City]                          [State]

173 FRIES MILL RD, TURNERSVILLE, NEW JERSEY 08012
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $230,635.00        (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is PACIFIC UNION FINANCIAL, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY                                    .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     3.750  %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st  day of each month beginning on     MARCH 1        , 2016          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on    FEBRUARY 1, 2046    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 655621, DALLAS, TEXAS 75265-5621
                                                                 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1,068.11          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE 03/30/15                          Page 1 of 4                    DocMagic eForms
                                                                          www.docmagic.com

Usfha.nte.xml

Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.   BORROWER'S FAILURE TO PAY AS REQUIRED
### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    4.000 % of the overdue amount of each payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

---

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE  03/30/15                              Page 2 of 4                              *DocMagic eForms*
www.docmagic.com

Usfha.nte.xml

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE  03/30/15                                      Page 3 of 4                         DocMagic eForms
                                                                                            www.docmagic.com

Usfha.nte.xml

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
THOMAS F GATTINELLA SR    -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

*[Sign Original Only]*

Loan Originator: PHILIP VALIANTI, NMLSR ID ███████
Loan Originator Organization: TAM LENDING CENTER INC., NMLSR ID
████████

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE  03/30/15                    Page 4 of 4                    DocMagic *eForms*
                                                                     www.docmagic.com

Usfha.nte.xml

# ALLONGE

**Pacific Union Loan #:** ████████

**Borrower(s):**    Thomas F Gattinella, Sr

**Property Address:** 173 Fries Mill Rd, Turnersville, New Jersey 08012

**Principal Balance:** $230,635.00

**Note Date:**        01/19/2016

## PAY TO THE ORDER OF

_____

### Without Recourse

Company Name:   Pacific Union Financial, LLC A California Limited Liability Company

By: _____
    **Kay Lee/Closer/Funder**

DOCKET#:2899      Type:ERX-Mortgage
PAGES:14

E-recorded

HONORABLE JAMES N. HOGAN
GLOUCESTER COUNTY CLERK
RECEIPT#:▓▓▓▓▓▓    02:44:24 PM

01/22/2016
MB  14560  29

Fee:$     150.00

PLEASE DO NOT DETACH THIS PAGE FROM THE ORIGINAL
DOCUMENT AS IT CONTAINS IMPORTANT INFORMATION AND
IS PART OF THE PERMANENT RECORD.

GLOUCESTER COUNTY RECORDING DATA PAGE

PLEASE DO NOT DETACH THIS PAGE FROM THE ORIGINAL
DOCUMENT AS IT CONTAINS IMPORTANT INFORMATION AND
IS PART OF THE PERMANENT RECORD.

RECORD & RETURN TO:
      SIMPLIFILE

GLOUCESTER COUNTY RECORDING DATA PAGE
HONORABLE JAMES N. HOGAN, COUNTY CLERK

After Recording Return To:
PACIFIC UNION FINANCIAL, LLC
1603 LBJ FREEWAY, SUITE 600
FARMERS BRANCH, TEXAS 75234
Loan Number: ▓▓▓▓▓▓

This Instrument Prepared By:

▓ # ▓
CHARGE, RECORD RETURN
TRIDENT LAND TRANSFER CO. NJ
3 EXECUTIVE CAMPUS
SUITE 160
CHERRY HILL, NJ 08002

—————————————— [Space Above This Line For Recording Data] ——————————————

# MORTGAGE

MIN▓▓▓▓▓▓▓▓▓

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** "Security Instrument" means this document, which is dated    JANUARY 19, 2016    , together with all Riders to this document.
**(B)** "Borrower" is THOMAS F GATTINELLA SR A SINGLE MAN

Borrower is the mortgagor under this Security Instrument.
**(C)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D)** "Lender" is PACIFIC UNION FINANCIAL, LLC

Lender is a    A CALIFORNIA LIMITED LIABILITY COMPANY    organized and existing under the laws of    CALIFORNIA
Lender's address is 8900 FREEPORT PARKWAY, SUITE 150, IRVING, TEXAS 75063

**(E)** "Note" means the promissory note signed by Borrower and dated    JANUARY 19, 2016    .
The Note states that Borrower owes Lender TWO HUNDRED THIRTY THOUSAND SIX HUNDRED THIRTY-FIVE AND 00/100    Dollars (U.S. $230,635.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    FEBRUARY 1, 2046    .

NEW JERSEY FHA MORTGAGE - MERS
NJMTGZ2.FHA  01/12/16                              Page 1 of 12                        DocMagic *eForms*
                                                                                      www.docmagic.com

Njmtgz2.fha.xml

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Planned Unit Development Rider
☐ Condominium Rider              ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Secretary" means the Secretary of the United States Department of Housing and Urban Development or his designee.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY                    of              GLOUCESTER              :
[Type of Recording Jurisdiction]                 [Name of Recording Jurisdiction]

NEW JERSEY FHA MORTGAGE - MERS
NJMTGZ2.FHA  01/12/16                    Page 2 of 12                    DocMagic eForms
www.docmagic.com

Njmtgz2.fha.xml

SEE ATTACHED EXHIBIT A
A.P.N.: BLOCK: 116.36 LOT: 8.08


which currently has the address of    173 FRIES MILL RD

[Street]

TURNERSVILLE        , New Jersey      08012        ("Property Address"):
[City]                                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    Payment of Principal, Interest, Escrow Items, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds

NEW JERSEY FHA MORTGAGE - MERS
NJMTGZ2.FHA  01/12/16                        Page 3 of 12                    DocMagic *eForms*
                                                                            www.docmagic.com

Njmtgz2.fha.xml

Doc-2899   Bk-MB   VI-14560   Pg-33

## EXHIBIT "A"

LAND AND PREMISES situate in the Township of Washington, County of Gloucester and State of New Jersey as follows:

BEGINNING at a point in the Northwesterly line of Fries Mill Road distant 2570.59 feet Northeastwardly from the center line of White Birch Road (50 feet wide); and runs; thence

(1) North 71 degrees 04 minutes West, 943.25 feet to a corner of same in line of Shuster's other land; thence

(2) Along Shuster's other land, in part North 18 degrees 56 minutes East 90 feet to a corner to Shuster's other land; thence

(3) Along reserved land South 71 degrees 4 minutes East, 943.25 feet to a point in the Northwesterly line of Fries Mill Road; thence

(4) Along the said road South 18 degrees 56 minutes West, 90 feet to the place of beginning.

TAX NOTE:  Being known as Block 116.36, Lot 8.08 on the official tax map (For informational purposes only).

15NJ03875

until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and, Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA,

NEW JERSEY FHA MORTGAGE - MERS
NJMTGZ2.FHA  01/12/16                                  Page 4 of 12                    DocMagic *eForms*
                                                                                      www.docmagic.com

Njmtgz2.fha.xml

Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration

NEW JERSEY FHA MORTGAGE - MERS
NJMTGZ2.FHA  01/12/16                          Page 5 of 12                          DocMagic eForms
                                                                                    www.docmagic.com

or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may

Njmtgz2.fha.xml

attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

NEW JERSEY FHA MORTGAGE - MERS
NJMTGZ2.FHA  01/12/16                          Page 7 of 12                          DocMagic eForms
                                                                                   www.docmagic.com

Njmtgz2.fha.xml

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through

Njmtgz2.fha.xml

that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

---

NEW JERSEY FHA MORTGAGE - MERS
NJMTGZ2.FHA  01/12/16                          Page 9 of 12                    DocMagic eForms
                                                                              www.docmagic.com

Njmtgz2.fha.xml

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

20. **Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified**

NEW JERSEY FHA MORTGAGE - MERS
NJMTGZ2.FHA  01/12/16                          Page 10 of 12                          DocMagic eForms
                                                                                     www.docmagic.com

Njmtgz2.fha.xml

in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
THOMAS F GATTINELLA SR   -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness:                          Witness:

_____        _____

NEW JERSEY FHA MORTGAGE - MERS
NJMTGZ2.FHA  01/12/16                    Page 11 of 12                    DocMagic eForms
                                                                          www.docmagic.com

Njmtgz2.fha.xml

——————————————— [Space Below This Line For Acknowledgment] ———————————————

State of New Jersey          )
                             ) ss
County of _____GLOUCESTER_____          )

On _____ , before me, _____ ,
a Notary Public in and for said county, personally appeared ___THOMAS F GATTINELLA SR___

_____ ,

(names(s) of signer(s)/witness(es))

who has/have satisfactorily identified himself/herself/themselves as the signer(s)/witness(es) to the above referenced
document.

_____     1-19-16
Notary's Signature                  Date

MICHELE REIHING
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES AUGUST 15, 2017

_____
Notary's printed, typed or stamped name

My commission expires: __8-15-17__

(Seal, if any)

Loan Originator: PHILIP VALIANTI, NMLSR ID ████
Loan Originator Organization: TAM LENDING CENTER INC., NMLSR ID ████

NEW JERSEY FHA MORTGAGE - MERS
NJMTGZ2.FHA 01/12/16                Page 12 of 12                DocMagic eForms
                                                                www.docmagic.com

Njmtgz2.fha.xml

DOCKET#:29335    Type:ERX-Assignment of Mo
PAGES:2

E-recorded

HONORABLE JAMES N. HOGAN
GLOUCESTER COUNTY CLERK
RECEIPT#:              :24:50 AM

08/02/2017
AB 335 122

Fee:$    40.00

**DOCUMENT DATE:** 08/01/2017

MUNICIPALITY: WASHINGTON  BLOCK:   LOT:

REFERENCE DOC: OTHER    14560    29    2899    1/22/2016 00:00:00

PARTIES:
FIRST PARTY-MORTGAGE ELECTRONIC REGISTRATION SYSTEMS IN
ADDITIONAL PARTY-PACIFIC UNION FINANCIAL LLC
SECOND PARTY-LAKEVIEW LOAN SERVICING LLC

RECORD & RETURN TO:
SIMPLIFILE

PLEASE DO NOT DETACH THIS PAGE FROM THE ORIGINAL
DOCUMENT AS IT CONTAINS IMPORTANT INFORMATION AND
IS PART OF THE PERMANENT RECORD.

GLOUCESTER COUNTY RECORDING DATA PAGE
HONORABLE JAMES N. HOGAN, COUNTY CLERK

When Recorded Return To:
Cenlar FSB C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

Regarding this instrument, contact Cenlar FSB, 425 Phillips Blvd, Ewing, NJ 08618, telephone # 1-800-223-6527, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PACIFIC UNION FINANCIAL, LLC, ITS SUCCESSORS AND ASSIGNS, WHOSE ADDRESS IS (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to LAKEVIEW LOAN SERVICING, LLC, WHOSE ADDRESS IS 4425 PONCE DE LEON BLVD, MS 5-251, CORAL GABLES, FL 33146 (800)223-6527, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage is dated 01/19/2016, made by THOMAS F GATTINELLA SR to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PACIFIC UNION FINANCIAL, LLC, ITS SUCCESSORS AND ASSIGNS, and recorded on 01/22/2016, in Mortgage **Book 14560, Page 29 and Docket # 2899**, in the office of the Register of Titles and County Recorder in **GLOUCESTER** County, **New Jersey**.

Property is commonly known as: 173 FRIES MILL RD WASHINGTON TWP
TURNERSVILLE, NJ 08012.

Dated this 01st day of August in the year 2017.
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PACIFIC UNION FINANCIAL, LLC, ITS SUCCESSORS AND ASSIGNS

_Patrick McCabe_
**PATRICK MCCABE**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 01st day of August in the year 2017, by Patrick McCabe as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PACIFIC UNION FINANCIAL, LLC, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_Michelle Brown_
**MICHELLE BROWN**
COMM EXPIRES: 10/13/2020

MICHELLE BROWN
Notary Public - State of Florida
My Commission #GG 38514
Expires October 13, 2020

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026, DOCR T011708-09-37-1S IC-1J FERMNU

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

| | |
|---|---|
| KML Law Group, P.C.<br>By:  Denise Carlon, Esquire<br>216 Haddon Avenue, Ste. 406<br>Westmont, NJ 08108<br>215-627-1322<br>Attorneys for Movant:  Lakeview Loan Servicing, LLC | |
| | Case No.:    <u>19-15850 ABA</u> |
| | Chapter:    <u>13</u> |
| In Re: | Judge:    <u>Andrew B. Altenburg Jr.</u> |
|   Thomas F. Gattinella<br>                    Debtor/Respondent | |

## CERTIFICATION OF SERVICE

1.  I, <u>Alexandra C. Carpenter</u>:

    ☐ Represent the _____ in the above-captioned matter.

    ☒ am the secretary/paralegal for <u>Denise Carlon, Esquire,</u> who represents the <u>Movant</u> in the above captioned matter.

    ☐ am the _____in the above case and am representing myself.

2.  On , I sent a copy of the following pleadings and/or documents to the parties listed in the chart below:

    - Proof of Claim
    - 410A Payment History
    - Escrow Statement
    - Loan Documents
    - Certification of Service

3.  I certify under penalty of perjury that the above documents were sent using the mode of service indicated.

Dated: 05/ 29 /2019                    /s/Alexandra C. Carpenter
                                       Signature

| Name and Address of Party Served | Relation of Party to the Case | Mode of Service |
|---|---|---|
| Thomas F. Gattinella<br>173 Fries Mill Road<br>Turnersville, NJ 08012 | Debtor | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| Steven N. Taieb<br>Taieb, Steven N.<br>Law Office of Steven Taieb<br>1155 Route 73, Suite 11<br>Mount Laurel, NJ 08054 | Attorney for Debtor | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ Notice of Electronic Filing (NEF)<br><br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| Isabel C. Balboa Esq.<br>Balboa, Isabel C.<br>Chapter 13 Standing Trustee<br>Cherry Tree Corporate Center - 535<br>Route 38 - Suite 580<br>Cherry Hill, NJ 08002 | Chapter 13 Trustee | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ Notice of Electronic Filing (NEF)<br><br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |

*rev. 8/1/16*

# Exhibit "B"

**STATISTICAL INFORMATION ONLY: Debtor must select the number of each of the following items included in the Plan.**

| Valuation of Security | Assumption of Executory Contract or Unexpired Lease | Lien Avoidance |
|---|---|---|

**Last revised: September 1, 2018**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

In Re:                                                              Case No.: _____

                                                                   Judge: _____

          Debtor(s)

## Chapter 13 Plan and Motions
second

☐  Original              ☐  Modified/Notice Required          Date: _____

☐  Motions Included      ☐  Modified/No Notice Required

THE DEBTOR HAS FILED FOR RELIEF UNDER
CHAPTER 13 OF THE BANKRUPTCY CODE

**YOUR RIGHTS MAY BE AFFECTED**

You should have received from the court a separate *Notice of the Hearing on Confirmation of Plan*, which contains the date of the confirmation hearing on the Plan proposed by the Debtor.  This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney.  Anyone who wishes to oppose any provision of this Plan or any motion included in it must file a written objection within the time frame stated in the *Notice*.  Your rights may be affected by this plan.  Your claim may be reduced, modified, or eliminated.  This Plan may be confirmed and become binding, and included motions may be granted without further notice or hearing, unless written objection is filed before the deadline stated in the Notice. The Court may confirm this plan, if there are no timely filed objections, without further notice. See Bankruptcy Rule 3015. If this plan includes motions to avoid or modify a lien, the lien avoidance or modification may take place solely within the chapter 13 confirmation process. The plan confirmation order alone will avoid or modify the lien.  The debtor need not file a separate motion or adversary proceeding to avoid or modify a lien based on value of the collateral or to reduce the interest rate.  An affected lien creditor who wishes to contest said treatment must file a timely objection and appear at the confirmation hearing to prosecute same.

---

**The following matters may be of particular importance. Debtors must check one box on each line to state whether the plan includes each of the following items. If an item is checked as "Does Not" or if both boxes are checked, the provision will be ineffective if set out later in the plan.**

---

THIS PLAN:

☐ DOES ☐ DOES NOT CONTAIN NON-STANDARD PROVISIONS. NON-STANDARD PROVISIONS MUST ALSO BE SET FORTH IN PART 10.

☐ DOES ☐ DOES NOT LIMIT THE AMOUNT OF A SECURED CLAIM BASED SOLELY ON VALUE OF COLLATERAL, WHICH MAY RESULT IN A PARTIAL PAYMENT OR NO PAYMENT AT ALL TO THE SECURED CREDITOR. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

☐ DOES ☐ DOES NOT AVOID A JUDICIAL LIEN OR NONPOSSESSORY, NONPURCHASE-MONEY SECURITY INTEREST. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

Initial Debtor(s)' Attorney: _____        Initial Debtor: _____        Initial Co-Debtor: _____

**Part 1:    Payment and Length of Plan**

a.  The debtor shall pay $ _____ per _____ to the Chapter 13 Trustee, starting on
_____ for approximately _____ months.    `7815.15 ptd`

b.  The debtor shall make plan payments to the Trustee from the following sources:

☐    Future earnings

☐    Other sources of funding (describe source, amount and date when funds are available):

c.  Use of real property to satisfy plan obligations:

☐  Sale of real property
Description:
Proposed date for completion: _____

☐  Refinance of real property:
Description:
Proposed date for completion: _____

☐  Loan modification with respect to mortgage encumbering property:
Description:
Proposed date for completion: _____

d.  ☐ The regular monthly mortgage payment will continue pending the sale, refinance or loan modification.

e.  ☐ Other information that may be important relating to the payment and length of plan:

**Part 2:    Adequate Protection ☐ NONE**

a.  Adequate protection payments will be made in the amount of $ _____ to be paid to the Chapter 13 Trustee and disbursed pre-confirmation to _____ (creditor).

b.  Adequate protection payments will be made in the amount of $ _____ to be paid directly by the debtor(s) outside the Plan, pre-confirmation to: _____ (creditor).

**Part 3:    Priority Claims (Including Administrative Expenses)**

a.    All allowed priority claims will be paid in full unless the creditor agrees otherwise:

| Creditor | Type of Priority | Amount to be Paid |
|---|---|---|
| CHAPTER 13 STANDING TRUSTEE | ADMINISTRATIVE | AS ALLOWED BY STATUTE |
| ATTORNEY FEE BALANCE | ADMINISTRATIVE | BALANCE DUE: $ |
| DOMESTIC SUPPORT OBLIGATION | | |

b.  Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount:
Check one:

☐ None

☐ The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim pursuant to 11 U.S.C.1322(a)(4):

| Creditor | Type of Priority | Claim Amount | Amount to be Paid |
|---|---|---|---|
| | Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount. | | |

**Part 4:    Secured Claims**

### a.  Curing Default and Maintaining Payments on Principal Residence: ☐ NONE

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor shall pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|----------|----------------------------|-----------|----------------------------|-----------------------------------------|----------------------------------------|
|          |                            |           |                            |                                         |                                        |

### b.  Curing and Maintaining Payments on Non-Principal Residence & other loans or rent arrears: ☐ NONE

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor will pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|----------|----------------------------|-----------|----------------------------|-----------------------------------------|----------------------------------------|
|          |                            |           |                            |                                         |                                        |

### c.  Secured claims excluded from 11 U.S.C. 506: ☐ NONE

The following claims were either incurred within 910 days before the petition date and are secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or incurred within one year of the petition date and secured by a purchase money security interest in any other thing of value:

| Name of Creditor | Collateral | Interest Rate | Amount of Claim | Total to be Paid through the Plan Including Interest Calculation |
|------------------|------------|---------------|-----------------|-----------------------------------------------------------------|
|                  |            |               |                 |                                                                 |

**d. Requests for valuation of security, Cram-down, Strip Off & Interest Rate Adjustments**  ☐ **NONE**

1.)  The debtor values collateral as indicated below. If the claim may be modified under Section 1322(b)(2), the secured creditor shall be paid the amount listed as the "Value of the Creditor Interest in Collateral," plus interest as stated. The portion of any allowed claim that exceeds that value shall be treated as an unsecured claim. If a secured claim is identified as having "NO VALUE" it shall be treated as an unsecured claim.

**NOTE: A modification under this Section ALSO REQUIRES
the appropriate motion to be filed under Section 7 of the Plan.**

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor Interest in Collateral | Annual Interest Rate | Total Amount to be Paid |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

2.)  Where the Debtor retains collateral and completes the Plan, payment of the full amount of the allowed secured claim shall discharge the corresponding lien.

**e. Surrender**  ☐ **NONE**

Upon confirmation, the stay is terminated as to surrendered collateral only under 11 U.S.C. 362(a) and that the stay under 11 U.S.C 1301 be terminated in all respects. The Debtor surrenders the following collateral:

| Creditor | Collateral to be Surrendered | Value of Surrendered Collateral | Remaining Unsecured Debt |
|---|---|---|---|
|  |  |  |  |

**f. Secured Claims Unaffected by the Plan** ☐ **NONE**

The following secured claims are unaffected by the Plan:

**g. Secured Claims to be Paid in Full Through the Plan**: ☐ **NONE**

| Creditor | Collateral | Total Amount to be Paid Through the Plan |
|---|---|---|
|  |  |  |

## Part 5:   Unsecured Claims ☐ NONE

**a. Not separately classified** allowed non-priority unsecured claims shall be paid:

☐ Not less than $ _____ to be distributed *pro rata*

☐ Not less than _____ percent

☐ *Pro Rata* distribution from any remaining funds

**b. Separately classified unsecured** claims shall be treated as follows:

| Creditor | Basis for Separate Classification | Treatment | Amount to be Paid |
|---|---|---|---|
|  |  |  |  |

## Part 6:   Executory Contracts and Unexpired Leases  ☐ NONE

(NOTE:  See time limitations set forth in 11 U.S.C. 365(d)(4) that may prevent assumption of non-residential real property leases in this Plan.)

All executory contracts and unexpired leases, not previously rejected by operation of law, are rejected, except the following, which are assumed:

| Creditor | Arrears to be Cured in Plan | Nature of Contract or Lease | Treatment by Debtor | Post-Petition Payment |
|---|---|---|---|---|
|  |  |  |  |  |

## Part 7:   Motions  ☐ NONE

**NOTE:  All plans containing motions must be served on all potentially affected creditors, together with local form, *Notice of Chapter 13 Plan Transmittal*, within the time and in the manner set forth in D.N.J. LBR 3015-1. A *Certification of Service*, *Notice of Chapter 13 Plan Transmittal and valuation* must be filed with the Clerk of Court when the plan and transmittal notice are served.**

**a. Motion to Avoid Liens Under 11. U.S.C. Section 522(f).**  ☐ NONE

The Debtor moves to avoid the following liens that impair exemptions:

| Creditor | Nature of Collateral | Type of Lien | Amount of Lien | Value of Collateral | Amount of Claimed Exemption | Sum of All Other Liens Against the Property | Amount of Lien to be Avoided |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

**b. Motion to Avoid Liens and Reclassify Claim from Secured to Completely Unsecured.** ☐ **NONE**

The Debtor moves to reclassify the following claims as unsecured and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor's Interest in Collateral | Total Amount of Lien to be Reclassified |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

**c. Motion to Partially Void Liens and Reclassify Underlying Claims as Partially Secured and Partially Unsecured.** ☐ **NONE**

The Debtor moves to reclassify the following claims as partially secured and partially unsecured, and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Amount to be Deemed Secured | Amount to be Reclassified as Unsecured |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

## Part 8: Other Plan Provisions

**a. Vesting of Property of the Estate**

☐ Upon confirmation

☐ Upon discharge

**b. Payment Notices**

Creditors and Lessors provided for in Parts 4, 6 or 7 may continue to mail customary notices or coupons to the Debtor notwithstanding the automatic stay.

**c. Order of Distribution**

The Standing Trustee shall pay allowed claims in the following order:

1) Ch. 13 Standing Trustee commissions

2) _____

3) _____

4) _____

**d. Post-Petition Claims**

The Standing Trustee ☐ is, ☐ is not authorized to pay post-petition claims filed pursuant to 11 U.S.C. Section 1305(a) in the amount filed by the post-petition claimant.

---

**Part 9:    Modification ☐ NONE**

If this Plan modifies a Plan previously filed in this case, complete the information below.

Date of Plan being modified: _____.

| Explain below **why** the plan is being modified: | Explain below **how** the plan is being modified: |
|---|---|
| | |

Are Schedules I and J being filed simultaneously with this Modified Plan?    ☐  Yes    ☐  No

---

**Part 10:    Non-Standard Provision(s): Signatures Required**

Non-Standard Provisions Requiring Separate Signatures:

☐ NONE

☐ Explain here:

Any non-standard provisions placed elsewhere in this plan are ineffective.

## Signatures

The Debtor(s) and the attorney for the Debtor(s), if any, must sign this Plan.

By signing and filing this document, the debtor(s), if not represented by an attorney, or the attorney for the debtor(s) certify that the wording and order of the provisions in this Chapter 13 Plan are identical to Local Form, *Chapter 13 Plan and Motions*, other than any non-standard provisions included in Part 10.

I certify under penalty of perjury that the above is true.


Date: _____          _____
                                                  Debtor


Date: _____          _____
                                                  Joint Debtor


Date: _____          _____
                                                  Attorney for Debtor(s)